[Civ. No. 24920.   First Dist., Div. Four.   Apr. 7, 1969.]

SHARON A. LAYTON et al., Plaintiffs and Appellants, v. WILLIAM E. WEST et al., Defendants and Respondents.

—————

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Herbert F. Layton, in pro. per., for Plaintiffs and Appellants.

Blair F. Burton for Defendants and Respondents.

CHRISTIAN, J.—In 1959 appellants Herbert and Sharon Layton took a 15-year lease of respondents' 42-unit apartment building. Appellants agreed both to pay monthly rent to respondents and to service certain encumbrances, of which the senior was held by Crocker-Citizens National Bank. The agreement gave appellants an option to purchase upon tender of a promissory note for an agreed price less the amount of outstanding encumbrances (which were to be assumed by appellants upon exercise of the option) and less a credit for the amount of rent paid prior to the exercise of the option.

.On February 27, 1963, appellants and respondents entered into two further agreements. The first was a modification of the above lease. The term of the lease was extended from 15 to

33 years, the monthly rental payments were somewhat altered for the years immediately following the modification, and a large "balloon" payment scheduled for the fifteenth year was eliminated entirely. The second document, executed on the same day, was a lease of a 10-unit apartment building by respondents to appellants on terms similar to the first lease.

On February 10, 1965, when litigation was already pending between the parties, appellants attempted to exercise their option to purchase the larger building. They sent respondents several documents: a promissory note and a deed of trust to be signed by appellants upon transfer of title; a grant deed to be signed by respondents; and a document by which appellants would assume the note (secured by deed of trust) held by ·Crocker-Citizens· Bank. The covering letter stated that delivery of the documents and transfer of title should take place on the afternoon of the following day. The attempted exercise of the option was immediately rejected by respondents. The letter of rejection listed five specific objections to appellants' attempt to exercise the option.

Appellants filed a first amended complaint on February 16, 1965, alleging, among other causes of action, one for a declaratory judgment as to the parties' rights regarding the lease and option covering the larger apartment building. On July 11, 1966, the first day of trial, appellants amended their complaint to add a new cause of action for specific performance of the lease. The case was tried on only these causes of action.

The trial court held appellants' attempted exercise of the option to be defective in that appellants had included a condition on which they had no right to insist. In so ruling, the trial judge expressly rejected respondents' theory that the two leases made up only one contract. Appellants contend that the attempted exercise of the option was in fact effective; even if it were not, appellants claim that respondents' rejection was invalid and therefore waived any defects in appellants' tender. Appellants also contend that the trial court erred in failing to award them incidental damages and damages in lieu of specific performance and in failing to make necessary findings.

The lease required, for exercise of the option, that "Lessee shall assume the heretofore listed notes, loans, encumbrances, deeds of trust and conditional sales contracts then still outstanding plus any loans or encumbrances placed on the property by the Lessee." The letter by which appellants

attempted to exercise the option stated that respondents were to execute an assumption agreement which accompanied the letter. That assumption agreement contained a provision that "the liability of [respondents] on the mentioned note shall not be affected thereby."

Appellants contend that their attempted exercise of the option was unequivocal and that the direction to execute the assumption agreement merely expressed their desire and not a fixed condition to the option exercise. This theory is based upon the following language of the covering letter: "Enclosed please find a Grant Deed to be completed and executed by you together with an assignment and assumption agreement both of which should be executed by you." This argument is specious. The transaction could not be completed if respondents refused to execute the grant deed; yet polite language was used to direct the signing of the grant deed as well as the assumption agreement. Apparently appellants intended the execution of the deed and the assumption agreement to be prerequisites to their execution of the note for the purchase price and the deed of trust securing it; in any event it was reasonable for respondents to interpret the language in that manner until some contrary explanation was had from appellants.

Appellants and respondents agree that it was intended under the option contract that appellants' assumption of the senior obligations would make them the principal obligors on those debts. This is the generally accepted effect of an assumption. (*Everts* v. *Matteson* (1942) 21 Cal.2d 437, 447 [132 P.2d 476], and cases cited therein; *Parrish* v. *Greco* (1953) 118 Cal.App.2d 556, 561 [258 P.2d 566].) Appellants argue that the assumption forms they provided would have carried out that expectation. But the agreement which respondents were asked to sign provided that their obligations to senior encumbrances "shall not be affected." That language is inconsistent with the change from primary to secondary obligor which appellants claim would nevertheless have resulted. For respondents to have remained primarily liable when they were no longer to receive any rent from which they could meet payments on the obligations is also inconsistent with the whole scheme laid out in the original lease and option.

Any tender of performance, including the exercise of an option, is ineffective if it imposes conditions upon its acceptance which the offeror is not entitled to demand. (Civ.

Code, § 1494; *Schiffner* v. *Pappas* (1963) 223 Cal.App.2d 526 [35 Cal.Rptr. 817].) However, the imposition of such conditions is waived by the offeree if he does not specifically point out the alleged defects in the tender. (Civ. Code, § 1501; Code Civ. Proc., § 2076; *Hohener* v. *Gauss* (1963) 221 Cal.App.2d 797 [34 Cal.Rptr. 656].) The rationale of the requirement of specific objection is that the offeror should be permitted to remedy any defects in his tender; the offeree is therefore not allowed to remain silent at the time of the tender and later surprise the offeror with hidden objections. (*Thomassen* v. *Carr* (1967) 250 Cal.App.2d 341, 350 [58 Cal.Rptr. 297].)

Respondents gave five reasons for rejecting appellants' exercise of the option. Four of these were based largely upon the theory that the two documents signed on February 27, 1963, constituted one contract. This contention was properly rejected by the trial court; hence it is not available to support the judgment. But the fifth specified objection was as follows: "In any event, the agreement which you have requested Mr. and Mrs. West to sign to the prior deed of trust holders is not satisfactory since it is not in accord with the unqualified assumption by you of the obligations." We uphold the trial court's determination that this objection was sound. Appellants contend that the specification of incorrect as well as correct reasons for rejecting the tender amounts to a repudiation of the option contract and excuses appellants from making a proper tender. But an offeree repudiates a contract only by clearly and absolutely refusing to perform. (Civ. Code, § 1440; e.g., *Boro* v. *Ruzich* (1943) 58 Cal.App.2d 535 [137 P.2d 51].) There was no such repudiation in this case. Moreover, to excuse an offeror from all further obligations if the rejection includes one unsound objection is to place a very great burden upon the offeree. If the specification of an incorrect reason will have the effect of nullifying a proper objection (also given) to a defective tender, then an offeree will be driven to select only the single strongest alleged defect in the tender as a basis for its rejection even though others may reasonably appear. This would result in an unwilling waiver by the offeree of all other possible objections to the tender. Therefore the offeror should meet all *valid* objections to his defective tender before improper objections will be held to excuse the duty of further tender. The requirement of proper objection to defects in a tender is not an absolute rule of law; it is an aid in determining the attitudes

and reasonable expectations of both parties. (6 Williston on Contracts (rev.ed. 1938) § 1819, at pp. 5158-5159.)

Finally, appellants contend that the trial court failed to make findings on a number of material issues; the only such issue urged before us is the question whether respondents properly credited some $2,700 in rental payments to one lease rather than the other. But these payments are not determinative on the two causes of action which were finally tried. No findings are required on issues raised on causes of action which are dismissed before trial (*Ballou* v. *Sunflower Gold Min. Co.* (1913) 165 Cal. 557 [132 P. 1036]). There was thus no error in the trial court's failure to make specific findings of fact upon the issues referred to by appellants.

The judgment is affirmed; the purported appeal from the order denying a new trial is dismissed.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied April 29, 1969, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied May 28, 1969.