[Civ. No. 36409. First Dist., Div. Two. Sept. 15, 1976.]

DOROTHY BUSHMAN ANTHONY et al.,
Plaintiffs and Respondents, v.
RALPH ENZLER et al., Defendants and Appellants.

**COUNSEL**

Richard V. Smith and Richard F. Swisher for Defendants and Appellants.

Buchman, Kass & Morgan and Kenneth M. Miller for Plaintiffs and Respondents.

**OPINION**

**KANE, J.**—Defendants appeal from the trial court's judgment granting relief in favor of respondents in an action brought for recovery of a real estate broker's commission and punitive damages. The background facts leading to the litigation may be summarized as follows.

On November 6, 1969, appellants Ralph and Ann Enzler ("Enzlers") entered into an exclusive listing agreement ("Listing Agreement") with respondents Dorothy Bushman Anthony and Laurel Roderick Cameron, doing business as C/H Realty ("C/H Realty") for the sale or other conveyance of approximately 105 acres of land and two residential homes situated in Auburn, California. The Listing Agreement called for the payment of 10 percent commission if the land was sold, exchanged or conveyed within the duration or within three months after the termination of the contract.[1] Pursuant to the verbal understanding of the parties, however, the broker's commission on the sale of the homes was fixed at 6 percent of the sale price. It was likewise agreed that the commission would also be paid to cooperating brokers who procured or attempted to procure a purchaser.

---

[1]Pertinent provisions of the Listing Agreement read as follows: "*I agree to pay Broker 10 percent of selling price if said property be sold, exchanged or conveyed within three months after the termination of this contract to any person with whom Broker has negotiated, or to whose attention he has called said property,* and whose name has during

On December 16, 1969, a cooperating broker, respondent Sark Pashayan, doing business as Pal Realty ("Pal") showed the property to appellant Calvin Armtrout ("Calvin") who purported to be a prospective purchaser representing himself and others. The sign of C/H Realty was located on the property and Calvin was also furnished a copy of the multiple listing form. Enzlers acknowledged that Calvin had been introduced by Pal as a prospective purchaser of the property.

Calvin, however, did not go through with the deal. Instead he informed his brother, appellant Richard H. Armtrout ("Richard") who, in the company of Calvin, visited the property several times, and after a series of discussions entered into an option contract to buy the property from the Enzlers. The option contract which was concluded on June 16, 1970, well within the efficacy of the Listing Agreement,[2] granted Richard three months for the exercise of the option.

This first option contract was followed by a second one which was signed by both Richard and Calvin. Although the second option contract granting the Armtrouts the right to buy the lots and one of the homes until October 16, 1970, was executed one week prior to the expiration of the Listing Agreement, it was not recorded until August 17, 1970, when the Listing Agreement had already expired. The record is uncontradicted that the recording of the option contract was delayed for the avowed purpose of avoiding the payment of a commission to C/H Realty, and also that in arriving at the lowered purchase price of the lots the parties took into account the saving of commission to the sellers. Finally, the record reveals that Calvin and Richard exercised the option on September 4, 1970, and that legal title was transferred to them and their wives on December 18, 1970.

In this action brought for recovery of broker's commission, interference with contract rights and punitive damages, the trial court, sitting without a jury, found that in purchasing the property Richard was acting as an agent for all of the Armtrouts; that the Enzlers entered into an option with the Armtrouts prior to the expiration of the three-month

the life hereof, been submitted to me in writing personally, or mailed to me at my address given below, *or was introduced to me as a prospect by Broker,* in each of which cases Broker shall conclusively be deemed the procuring cause of the sale, exchange or conveyance." (Italics added.)

[2]Pursuant to the Listing Agreement, C/H Realty was authorized to sell the property until May 15, 1970, and, as noted before, the broker's commission was still due if the sale took place within an additional three months, expiring August 15, 1970.

period; that the property was sold to the Armtrouts prior to August 15, 1970, the expiration date of the Listing Agreement; that by entering into a contract with the Armtrouts prior to August 15, 1970, the Enzlers breached the Listing Agreement; that the Armtrouts induced the Enzlers to breach their contract with respondents with the intent to defeat the broker's right to a commission and thereby unlawfully interfered with the contractual relationship between the Enzlers and respondents; and that their conspiracy to deprive respondents of their commission was deliberate, purposeful and made with the intent to vex, harass and injure respondents. Accordingly, the trial court ordered the Enzlers and Armtrouts to pay a broker's commission in the amount of $15,190. In addition, the Armtrouts were found liable for payment of punitive damages in the sum of $5,000.

▪ Appellants' primary contention on appeal is that the trial court erred in finding that the Enzlers breached the Listing Agreement and therefore became liable for payment of the broker's commission under said agreement. In effect, appellants insist that the options entered into prior to August 15, 1970, did not constitute a sale; that the actual sale of property giving rise to a broker's commission took place only on December 18, 1970, when the Listing Agreement was no longer in effect. Under these circumstances, continue appellants, it cannot be said that the Enzlers breached the contract, and in the absence of breach of contract the trial court could not properly conclude that the Armtrouts unlawfully interfered with the contractual relationship between the Enzlers and respondents. For the reasons which follow, we disagree with appellants and affirm the judgment.

▪ It is well established that an option is not a sale of property, but rather a sale of a right to purchase. The option becomes a contract of sale binding on both parties only on acceptance of the option by the optionee. This does not mean, however, that a new contract is in fact made by and at the time of the acceptance. On the contrary, the contract has already been made as far as the optionor is concerned, but is merely subject to conditions which are removed by acceptance (*Palo Alto Town & Country Village, Inc.* v. *BBTC Company* (1974) 11 Cal.3d 494, 503 [113 Cal.Rptr. 705, 521 P.2d 1097]; *Dawson* v. *Goff* (1954) 43 Cal.2d 310, 317 [273 P.2d 1]; *Warner Bros. Pictures* v. *Brodel* (1948) 31 Cal.2d 766, 772-773 [192 P.2d 949, 3 A.L.R.2d 691]). As stated in *Seeburg* v. *El Royale Corp.* (1942) 54 Cal.App.2d 1, 4 [128 P.2d 362]: the option vests in the grantee the right of acquiring an interest in the land and *when the right is exercised it necessarily relates back to the time of giving the option.*

(See also *Smith* v. *Bangham* (1909) 156 Cal. 359, 365 [104 P. 689]; 1 Witkin, Summary of Cal. Law (8th Ed. 1973) Contracts, § 127, p. 125.) In accordance with these principles, it has been held that although the broker has only secured an option, he is entitled to a commission when the customer exercises the option within the life thereof, by entering into the transaction which the broker was employed to negotiate (*Zinn* v. *Ex-Cell-O Corp.* (1944) 24 Cal.2d 290, 296 [149 P.2d 177]).

■ The application of the foregoing precepts is dispositive of the case at bench. The facts here are undisputed that the first option to buy the property was given to Richard by an instrument dated June 16, 1970. It is likewise conceded that the second option which was granted to both Calvin and Richard was executed on or about July 27, 1970, also well before the expiration date of the Listing Agreement. Since the ·date of sale relates back to the time of giving the option, it is immaterial that the option held by the Armtrouts was in fact exercised on September 4, 1970, and/or that the grant deed conveying the property was not recorded until December 18, 1970.

■ Appellants' contention that respondents are not entitled to the commission because only Calvin—not Richard—was introduced to the Enzlers as a prospective buyer, and that as a consequence respondents may not be deemed the " ' "procuring and inducing cause" ' " of sale (*Bail* v. *Glantz* (1926) 78 Cal.App. 49, 54 [248 P. 258]; 10 Cal.Jur.3d, Brokers, § 102, p. 596), cannot be accepted for two reasons. One, it is an elementary rule that the existence of agency is a factual question within the province of the trier of fact whose determination may not be disturbed on appeal if supported by substantial evidence (*Thayer* v. *Pacific Elec. Ry. Co.* (1961) 55 Cal.2d 430, 438 [11 Cal.Rptr. 560, 360 P.2d 56]; *Brokaw* v. *Black-Foxe Military Institute* (1951) 37 Cal.2d 274, 278 [231 P.2d 816]). In the case at bench there is abundant evidence supporting the trial court's finding that in the transaction here involved Richard was acting as an agent for Calvin. Two, as emphasized before, the second option contract was executed by both Calvin and Richard, which convincingly indicates that they proceeded in combination in an effort to purchase the Enzler property listed with respondents. This conclusion is further fortified by the circumstance that the Armtrouts sold the property at issue almost instantaneously to Sorrento Development Corporation, a third party, making a substantial profit on the resale which was shared between Calvin, Richard and their wives.

Appellants lastly contend that the commission on the sale of the house cannot be rightfully awarded because the agreement between the Enzlers and respondents was oral rather than written, and therefore violative of section 1624, subdivisions 4 and 5 and section 2309 of the Civil Code. There is no merit in this contention.

To begin with, contrary to appellants' assertion, the provision that the houses may be purchased separately, one for $30,000 and the other for $60,000, was incorporated in and thereby became an integral part of the written Listing Agreement. Furthermore, the trial court found that the December 24, 1969, letter from appellant Ralph Enzler to C/H Realty did constitute a memorandum which satisfied the aforecited sections of the Civil Code. ■ Finally, as respondents aptly point out, the judgment of the trial court is supported not only by the theory of breach of contract, but also by the tort doctrine of intentional interference with prospective economic advantage (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 822-823 [122 Cal.Rptr. 745, 537 P.2d 865]). It is well established that under the latter theory a commission is recoverable even if it would otherwise be unenforceable for a failure to comply with the statute of frauds (*Keely* v. *Price* (1972) 27 Cal.App.3d 209, 216 [103 Cal.Rptr. 531]; *Buckaloo* v. *Johnson, supra,* at p. 825).

In view of our conclusion, the additional issues raised by the parties need not be decided.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.