[Civ. No. 4699. Fifth Dist. Sept. 18, 1981.]

NORMAN ROLLINS, Plaintiff and Appellant, v.
NORENE STOKES, et al., Defendants and Respondents

COUNSEL

Houk, Hicks & Spain and Lloyd L. Hicks for Plaintiff and Appellant.

McCormick, Moock & McCormick, McCormick, Ide & Kalst, Walter K. McCormick, George L. Thurlow and Steven L. Kabot for Defendants and Respondents.

OPINION

**PETTITT, J.***—This case comes to this court on an appeal from an order granting respondents' motion for summary judgment and from the judgment entered thereon. The appeal involves the legal effect of respondent Joe J. Correia's (Correia) preemptory right, set out in a lease, to purchase real property owned by respondent Norene Stokes (Stokes). Stokes was lessor. All parties have agreed appellant's complaint presented issues of law only, and that a motion for summary judgment was the appropriate vehicle for resolution of the issues involved.

Plaintiff and appellant, Norman Rollins (Rollins), filed a complaint for declaratory relief naming respondents, Stokes and Correia, as defendants.

The complaint essentially prayed that respondent Correia should be declared to have no right to acquire ownership of the leased property in question.

The lower court ruled that Correia's "option" under the lease between himself and Stokes was prior in time and superior to the rights of appellant to purchase (under the terms of a later option to purchase given by Stokes to appellant Rollins). In this connection the trial court made detailed findings of fact and conclusions of law. Among the findings and conclusions the court found and concluded that appellant was granted a valid option by Stokes but that it was subject to the prior rights of Correia. The court further found that at all relevant times appellant had full knowledge of the terms of the Correia lease including the so-called option provision.

---

*Assigned by the Chairperson of the Judicial Council.

STATEMENT OF FACTS

The facts in this case are taken from declarations and various documents filed with the court. The lease in question was of farm property in Tulare County and was entered into on January 1, 1975. The term ended on December 31, 1977. The critical clause in the lease provided:

"OPTION: Should Lessors intend to sell the said real property during the term hereof, or any lawful extension hereof, they will first notify Lessee of any offer for the purchase of said property, and Lessee shall thereafter have the option for a period of 15 days within which to purchase the same upon the same terms and conditions as Lessor is willing to sell to any other persons."

The following facts are set out in appellant's declaration. For a long period of time appellant Rollins, a licensed real estate broker whose principal business was buying and selling real estate for his own account, was advertising that he was interested in buying property. Stokes contacted appellant, who looked at the Stokes property in question. Stokes at that time showed appellant the Correia lease and Stokes read the lease. The two of them then discussed the "option" provision set out in the lease. Appellant asked Stokes if she knew Correia had a right to purchase the property if she offered it for sale and Stokes said she did. Appellant then stated "I am not interested in bidding against your tenant and we'll have to overcome that problem before I would purchase the property and that I was not interested in the property unless I could get around the lease." Appellant and Stokes then discussed the possibility of an option.

The next day, February 9th, appellant and Stokes signed an "Option To Purchase." The option described the subject property and provided in relevant part:

"... a PURCHASE PRICE OF $36,000.00 (Thirty six thousand DOLLARS), upon the following TERMS AND CONDITIONS:

"$18,000. cash down payment including the above $1,000. 18,000. by a note, secured by a deed of trust on the subject property, executed by Rollins in favor of Stokes. Note to be payable in annual installments of $1500. or more per year plus interest at 7-1/2% per annum on deferred balances. The first payment of principal & interest shall be due one

year from the recording of deed. Deed of trust shall not encumber the northwest 208' x 208' of the subject property.

"1. This option shall not be exercised prior to Jan. 5, 1978.

"2. All closing costs are to be charged according to normal Tulare County customers.

"3. Optionor is aware that optionee is a licensed real estate broker."

We note that the option could only be exercised after the lease had expired on December 31, 1977.

Appellant gave Stokes a $1,000 check.

In her declaration, Stokes agreed that prior to signing the option to purchase, she told appellant that Correia had an option to purchase and that she did not believe appellant "could set the date ahead," and she "would have to tell Mr. Correia about it." This angered appellant.

On February 11, 1977, Stokes and appellant signed a "Memorandum of Option" for recording purposes.

About five days later, appellant's attorney received a letter from Stokes' attorney stating in essence that respondent Correia had to be offered the property on the same terms.

According to the proof of service, on March 4, 1977, Stokes caused to be served a copy of the "Option Agreement" and the following notice on respondent Correia:

"JOE J. CORREIA, 6739 Ave. 290, Visalia, California

"You are hereby notified that I have had an offer to purchase the property now under lease to you under the Farm Lease dated January 1, 1975 as follows:

"For a total price of $36,000.00 payable $1,000.00 down payment at this time, the further sum of $17,000.00 cash not later than February 9, 1978, at which time I would give you a deed to the property and you would execute a note for the remaining $18,000.00 payable in install-

ments of $1500.00 or more per year together with interest at the rate of 7-1/2% on unpaid balances. First payment of principal to be due one year from delivery of deed to you. This note to be secured by a First Deed of Trust. Attached is a copy of the offer I now have.

"As you know, our lease provides that you will have first option to buy on above terms for a period of 15 days (from date this notice is delivered to you).

"If you do not evidence your matching the above offer within 15 days by delivering to me a check and your written agreement to purchase on these terms, your option shall have no further force or effect.

"DATED: March 2, 1977.

/s/ Nora Irene Stokes
NORA IRENE STOKES"[1]

On March 9th or 10th, 1977, Stokes' attorney received a letter from Correia's attorney stating:

"The purpose of this letter is to confirm ... Mr. Correia's desire to exercise his option to purchase as communicated to you in our telephone conversation of March 7, 1977."

On March 14, 1977, Stokes' attorney wrote to appellant's attorney that Correia desired to exercise his option to purchase the property owned by Stokes.

On March 18th, Stokes' attorney received a $1,000 check from Correia's attorney. (This was the 14th day after notice by Stokes to Correia.) According to Stokes' attorney's declaration, the attorney also received a letter from Correia's attorney indicating that the payment represented the initial payment under an option to purchase the property "to be executed by [Stokes] and [Correia] upon the exact terms as set forth in the Option to Purchase dated February 9, 1977, and signed by [appellant]."[2]

---

[1] One of Stokes' attorneys sent a letter to appellant's attorney, dated March 3d, stating that Stokes had not cashed appellant's check upon his advice. Stokes' attorney also attached a copy of the "notice" that would be served on Correia.

[2] Correia stated in his declaration that he authorized the initial payment under the option and intended to purchase the property on the exact terms of the "Option to Pur-

On March 24, 1977, Stokes' attorney acknowledged receipt of the $1,000 check. Subsequently (apparently on or after March 31, 1977, the 27th day after the notice) Stokes' attorney received an "Option To Purchase" signed by Correia dated February 9, 1977. That document was practically identical to appellant's option to purchase.

Shortly after January 3, 1978, Stokes' attorney received a letter and check for $17,000 from Correia's attorney, which was the balance of the $18,000 down payment.

On February 6, 1978, appellant notified Stokes that he was exercising his option to purchase Stokes' property pursuant to the February 9, 1977 written option.

### DISCUSSION

The issues raised by appellant are first, whether the granting of the option to appellant triggered respondent Correia's preemptory right to purchase, and second, whether respondent Correia failed to exercise his preemptory right according to the applicable terms.

Appellant argues that Correia's preemptory right was only operative with respect to a *sale* during the lease term. Appellant interprets the clause in the lease to mean that the intended sale must be during the term of the lease. Further, the *intent to sell* which may be formulated during the lease does not trigger Correia's preemptory rights. Appellant hypothesizes that if Stokes had telephoned him the day after the lease expired and offered to sell the property, Correia should not be able to argue that Stokes had formulated the intent to sell during the lease term and that, therefore, he was entitled to notice and a preemptory right to purchase. Appellant also urges there was no intended sale during the lease term as appellant's option did not permit him to purchase the property until after the expiration of the lease term. Thus, again Correia's preemptory rights never came into being.

Appellant also relies on cases which hold that an option is not a sale of real property (see, e.g., *Hicks* v. *Christeson* (1917) 174 Cal. 712, 716 [164 P. 395]), so here the grant of the option to appellant did not constitute a sale of any interest in the property. Thus there is "again no

chase" signed by appellant. Correia also claimed he executed an "Option To Purchase" on February 9, 1977, and instructed his attorney to transmit it to Stokes.

basis for holding that the pre-emptive [*sic*] purchase rights set forth in the lease became operative."

Respondents filed a joint brief. They argue that the formulation of an intent to sell during the lease period triggered Correia's option to purchase; that Correia had a preemptory right to purchase and the decision to sell is critical, not the actual sale. Furthermore, respondents argue Stokes agreed to sell to appellant during the lease term as the option with appellant created a unilateral contract binding on Stokes, and when appellant decided to exercise the option a bilateral contract was created. (*Palo Alto Town & Country Village, Inc.* v. *BBTC Company* (1974) 11 Cal.3d 494 [113 Cal.Rptr. 705, 521 P.2d 1097].) Also, appellant's exercise or acceptance of the option related back to the giving of the option which was within the lease term. Thus under any of these theories Correia's preemptory right came into being.

Respondents also contend that appellant intended to circumvent the object of the parties to the lease which was to give Correia an option.

■ Neither party points to any extrinsic evidence to aid in interpreting the written instruments.

As a result, we apply the general rule restated in *Davies Machinery Co.* v. *Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 23 [113 Cal.Rptr. 784]: "In reviewing a trial court's interpretation of a written instrument where no conflicting extrinsic evidence is received, an appellate court is not bound by the trial court's ruling but must give the writing its own independent interpretation." (See also 6 Witkin, Cal. Procedure (2d ed. 1971) §§ 257-260, pp. 4248-4251.)

■ In *Anthony* v. *Enzler* (1976) 61 Cal.App.3d 872, 876 [132 Cal.Rptr. 553], the court aptly described an option contract:

"It is well established that an option is not a sale of property, but rather a sale of a right to purchase. The option becomes a contract of sale binding on both parties only on acceptance of the option by the optionee. This does not mean, however, that a new contract is in fact made by and at the time of the acceptance. On the contrary, the contract has already been made as far as the optionor is concerned, but is merely subject to conditions which are removed by acceptance [citations omitted]." (See also *Palo Alto Town & Country Village, Inc.* v. *BBTC Company, supra*, 11 Cal.3d 494, 503.)

On the other hand, a preemptive right gives the holder the first right to buy when and if the owner later wants to sell. If the holder does not buy, the owner of the property may sell to anyone. Conversely, an option gives the holder a power to compel a sale regardless of whether the owner then wants to sell. (*Nelson* v. *Reisner* (1958) 51 Cal.2d 161, 166 [331 P.2d 17]; *Mercer* v. *Lemmens* (1964) 230 Cal.App.2d 167, 171 [40 Cal.Rptr. 803] [the preemptive right is "activated" when the owner has elected to sell]; see also 1 Witkin, Summary of Cal. Law (8th ed. 1973) § 131, pp. 127-128.)

■ At the outset, there does not seem to be any dispute by the parties that the lease granted respondent Correia a preemptive right. Although the term "option" was used in the subject clause, the label does not control. (See 1A Corbin, Contracts (1963) § 261A, pp. 483-491.)

It may also be noted that the lessee Correia's first right of refusal or preemptive right was part of the consideration for his covenants under the lease. (See *Nelson* v. *Reisner, supra*, 51 Cal.2d 161, 165-166.)

What then triggered Correia's preemptive right to purchase? The intent of the parties was that once a third party made an offer to Stokes that she was willing to accept, Stokes was required to notify Correia, whereupon Correia's preemptive right ripened into an option to purchase the property according to the terms and conditions of the third party's offer. The lease provision makes this clear as Correia had 15 days within which to purchase the property upon the same terms and conditions that Stokes was willing to sell to appellant.

Accordingly, when Stokes manifested her intent to sell the property by entering into the option contract with appellant and subsequently notified Correia, the preemptive right was activated. As stated in Corbin:

"An owner of land may receive 50 offers to buy it every single day, but if he does not care to sell the land, those 50 offers are not legally operative to give the holder of the right of first refusal the power to buy. It is the owner's selection of a particular offer as one he might be willing to accept, and his manifestation of that willingness by communicating the particular offer to the holder of the right which gives the holder a present power of buying the land on the terms of that offer." (1A Corbin, Contracts (1980 Pocket Supp.) § 261, p. 171.)

Such an interpretation is consistent with the conduct of the respondents, which is persuasive evidence in determining the meaning of written instruments. (*Davies Machinery Co. v. Pine Mountain Club, Inc., supra*, 39 Cal.App.3d at p. 26; 1 Witkin, Summary of Cal. Law (8th ed. 1973) § 527, p. 449.)

Within a month after Stokes signed appellant's option contract, Stokes notified Correia pursuant to the lease so that Correia could make his election. Correia then communicated to Stokes his desire to exercise his preemptive right. Significantly respondents proceeded under the preemptive clause of the lease even though appellant's option could only be exercised after the lease had expired. It is evident from respondents' conduct that they treated appellant's option contract, regardless of the postlease exercise clause, as equivalent to an "offer for the purchase" of the subject property so as to trigger Stokes' lease obligations and Correia's preemptive right.

We note that we do not have the type of situation suggested by appellant wherein Stokes, the lessor, merely entertained a subjective intent to sell the property (to no one in particular) and then after the lease expired, contacted a prospective buyer. If this were such a case, Correia would be hardpressed to assert his preemptive right.

Rather, the parties to the lease contemplated some objective manifestation of Stokes' intent to sell the property based on a third party's offer.

As an additional grounds to uphold the judgment, we look to option contract theory. From the lessor's or optionor's point of view (i.e., Stokes), there was a contract to sell the property during the lease term. (*Palo Alto Town & Country Village, Inc. v. BBTC Company, supra*, 11 Cal.3d 494, 503-504.) When Stokes signed appellant's "option to purchase" she was contractually bound to sell the property to appellant if appellant exercised that option. Not only was there a contract to sell but once appellant exercised his option, the right to acquire the property related back to the time of the giving of the option (*Seeburg v. El Royale Corp.* (1942) 54 Cal.App.2d 1, 4 [128 P.2d 362]; *Anthony v. Enzler, supra*, 61 Cal.App.2d 872, 876), which in this case was during the term of the lease. On either of these two grounds Stokes, for purposes of activating the preemptive right, sold the property during the lease term.

Thus the trial court was correct in ruling that although appellant may have had a valid option contract, his rights were subject to those of Correia. Simply stated, Correia's preemptive right was triggered during the lease term when we look to the theories of option and preemptive rights and the conduct of the parties.[3]

■ Appellant next argues Correia failed to exercise his preemptory right according to its terms.

The "option" clause in the lease did not specify a method for the exercise of the preemptive right. In this case we find it appropriate to analogize to the exercise of an option contract. ■ Hence, when the provisions of an option contract prescribe the particular manner in which the option is to be exercised, they must be strictly followed. (*Palo Alto Town & Country Village, Inc. v. BBTC Company, supra*, 11 Cal. 3d 494, 498.) Nevertheless, when the option contract merely suggests but does not positively require a particular means of communicating the exercise of the option, another method of communication is not precluded. (*Ibid*; see also *Erich v. Granoff* (1980) 109 Cal.App.3d 920, 929 [167 Cal.Rptr. 538].)

■ The evidence reveals that Correia on two occasions notified Stokes' attorney that he intended to exercise his preemptive right to purchase the subject property. First, on March 9th or 10th Stokes attorney received a letter from Correia's attorney expressing Correia's desire to exercise his right. Second, on March 18th (the 14th day after Correia's receipt of the notice), Correia sent Stokes a $1,000 check representing the initial payment under an option to purchase to be executed by Stokes and Correia upon the exact terms as appellant's February 9 option.

Thus Correia validly exercised his preemptive right by way of his attorney's two letters and payment of $1,000, all of which were done within the 15 days specified in the lease clause.

---

[3]Appellant and respondents agree that there are no California cases dealing directly with the factual situation presented here. (But see *Richfield Oil v. Security First Nat. Bank* (1958) 159 Cal.App.2d 184 [323 P.2d 834] [upholding a right to exercise preemptory right to purchase where property is sold at probate sale]; *Henderson v. Nitschke* (1971) (Tex.Civ.App.) 470 S.W.2d 410 [where the court held the lessor had formed an intent to sell which activated the lessee's preemptory right even though the purchase offer the lessor received from a third party was revoked before the lessee exercised the right of first refusal]; *Anderson v. Armour and Company* (1970) 205 Kan. 801 473 P.2d 84] [holding a trade/exchange of property was a sale].)

Additionally, we hold that Stokes waived any defective performance in terms of Correia's compliance with the 15-day notice which required Correia to "... evidence [his] matching [appellant's] offer within 15 days by delivering to [Stokes] a check and [his] written agreement to purchase on [those] terms...."

We have already pointed out that Stokes' attorney received Correia's $1,000 check before the 15th day after Stokes' notice to Correia concerning appellant's option. It has also been pointed out that Stokes did not receive Correia's written option agreement until after the 15th day. Nevertheless, we find Correia acted in a timely manner. His documentation was in substantial compliance with his right and the demand of Stokes. Furthermore, Stokes was satisfied. ▇ Although acceptance must be in the terms of the option agreement, an optionor can waive one or more of the terms. (*Riverside Fence Co.* v. *Novak* (1969) 273 Cal.App.2d 656, 660 [78 Cal.Rptr. 536].) If an optionor does not specify the alleged defects in the tender by the optionee, then a waiver results. (*Layton* v. *West* (1969) 271 Cal.App.2d 508, 512 [76 Cal.Rptr. 507].) The reason for this rule is that an optionee should be able to remedy any defects in his tender and prevent the optionor from remaining silent at the time of the tender and later surprise the optionee with hidden objections. (*Ibid.*) This court believes the same rules should apply to the exercise of a preemptive right.

▇ So although Correia did not deliver his matching offer within the 15-day period provided for in the notice, he substantially complied and Stokes waived any defective tender. (*Ibid.*)

Nonetheless, appellant seizes on the language that Correia had 15 days within which to "purchase" arguing that Correia had to purchase the property and not merely procure an option.

Read literally, appellant is correct. However, as we have stated, the intent of that clause was to grant Correia a preemptive right to enter into an agreement with Stokes on the same terms and conditions of an acceptable third-party offer. In this case the third party's offer was an option contract.

Further, appellant's literal interpretation is without merit because it would frustrate Correia's preemptory right to purchase. For instance, by using an option contract, appellant could prevent a "purchase" from taking place within 15 days. The reason, of course, is that the option

under appellant's option contract could not be exercised until well after the 15th day from Correia's receipt of the notice. Despite Stokes' intent to sell the property during the lease term, appellant's use of an option contract with a delayed exercise clause was designed effectively to foreclose Correia from exercising his preemptive right.

Such a result is inconsistent with the intent and the conduct of the parties to the lease.

Respondent Stokes is satisfied with respondent Correia's performance. Appellant should not be heard to complain.

The judgment is affirmed.

Franson, Acting P. J., and Hanson (P. D.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 25, 1981.