[No. G002906. Fourth Dist., Div. Three. Aug. 31, 1987.]

JACK McCULLOCH et al., Plaintiffs and Respondents, v.
M & C BEAUTY COLLEGES, INC., et al., Defendants and
Appellants.

**COUNSEL**

Mink, Neiman & Kinney and Michael E. Kinney for Defendants and Appellants.

Wolf & Collender and Gerald A. Wolf for Plaintiffs and Respondents.

OPINION

TROTTER, P. J.—Defendant M & C Beauty Colleges, Inc. (M & C), lessees under a five-year commercial lease with Michele Tamma, former owner of property at 301 No. Main St. in Santa Ana, appeals from a judgment against it in a suit for unlawful detainer brought by recent purchasers of the property, Jack and Joy McCulloch. The 1981 lease between M & C and Tamma provided by addendum that M & C had a "right of first refusal to meet any bona fide offer of sale" of the subject property "on the same terms and conditions of such offer." M & C's defense in the unlawful detainer action was that it had properly exercised its right of first refusal, the sale to the McCullochs was void, and it was under no obligation to pay rent to them. A jury rendered a nine-to-three verdict in favor of the McCullochs specifically finding, ". . . that Plaintiffs JACK MCCULLOCH and JOY MCCULLOCH were the bona fide purchasers of the real property located at 301 North Main Street . . .," that the McCullochs were the owners and that M & C failed to pay rent. The court found damages suffered by plaintiffs to be in the amount of $12,733.32. Plaintiffs submitted a cost bill which included a request for attorneys' fees in the amount of $14,653.75. M & C's motion to tax costs based on a claim that attorneys' fees were improper was denied, as was its motion for new trial.

On this appeal M & C contends the jury was improperly instructed on the law respecting M & C's rights under the first refusal provision, and the trial court abused its discretion by denying M & C's motion for new trial and its motion to tax costs.

FACTS

M & C and Tamma entered into a five-year lease in 1981. By addendum, the lease provided that M & C was to have a right of first refusal to meet any bona fide offer to purchase the property within 30 days after written notice of such offer from the lessor.[1]

On May 8, 1984, Tamma received an offer from the McCullochs to purchase the subject property for $250,000 on the following terms: $50,000

---

[1]At the time the lease was entered into, Tamma had no desire to sell the property. However, concern over Santa Ana's seismic ordinance and the effect it might have on the subject property influenced her to give M & C the right of first refusal. The addendum to the lease containing the right of first refusal was drafted by M & C's attorney.

down and a $200,000 promissory note secured by the subject property. The owners' representative with respect to the sale, Warren Finley, an attorney and a relative of the owner,[2] told the McCullochs that the sale property was not an acceptable security for the $200,000 promissory note because the property was not in compliance with Santa Ana's seismic ordinance. If the building was destroyed or damaged by an earthquake, the security would be impaired and the seller, who lived abroad, did not want to have to subordinate to a construction loan to bring the building into seismic compliance.[3] After negotiating, Finley, and eventually the owner, agreed to take two notes, one unsecured in the sum of $100,000 and the other for $100,000 secured by a building owned by the McCullochs on East Fourth Street in Santa Ana.[4] An escrow was opened and escrow instructions were signed by the McCullochs on June 7, 1984, and sent to Italy for the seller's signature.

Finley was unaware of M & C's right of first refusal until the end of June when he was told of its existence by the real estate agent, Mr. Miller. The McCullochs and Finley agreed that they would let escrow close and a deed issue in McCullochs' name subject to any right of M & C to exercise first refusal. Finley testified, "The agreement was that in the event M & C . . . exercised their right of first refusal in a valid manner that Mr. McCulloch would convey back to us the property; we would pay back to Mr. McCulloch the $50,000 that he paid us; we would reimburse him for all out-of-pocket expenses that he had incurred from the date of the close of the escrow to the time that he conveys back; and then of course we would then turn around and convey to M & C." They felt this agreement was necessary because seismic rehabilitation of the subject property had to begin by July 29, 1984, or Santa Ana would declare the building unsuitable for occupancy and there was a possibility the building could be destroyed. Seller did not have the financial resources to bring the building up to earthquake safety standards, but the McCullochs did. However, they did not wish to commence improving the property unless they had title to it.

---

[2] Finley was Tamma's half brother. Tamma was the legal owner of the property, but her mother, who was also Finley's stepmother, Rosemary Finley, had a life estate in the property. Rosemary lived in Geneva, Switzerland, and Tamma lived in Bari, Italy. Finley represented both women's interests in the United States.

[3] Finley testified he advised Rosemary and Tamma not to accept a trust deed against the subject property. The property was his stepmother's only source of income. Neither Rosemary nor Tamma had the $187,000 necessary to bring the property into compliance with Santa Ana's Seismic Code. If an earthquake occurred (an apparent inevitability according to experts), the building would be destroyed, along with its worth as security for the purchase price. Further, if the new owner wished to bring the property up to code, he would have to borrow the money from a bank which would undoubtedly require that Rosemary and Tamma subordinate any trust deed they had on the property to the bank's loan.

[4] The McCullochs suggested four or five possible properties owned by them as security for the $100,000 note. The Fourth Street property was selected because it had been improved to comply with Santa Ana's seismic requirements, and it was fully leased.

On July 5, five days prior to the close of escrow, Finley wrote to M & C informing it of the terms and conditions of the proposed sale to the McCullochs. Under the terms of the lease addendum, M & C had 30 days from July 5 to respond. On August 6, 1984, Finley received a telegram from M & C stating it wished to purchase the subject property on what it purported to be the same terms as the McCulloch deal. M & C offered $50,000 down, an unsecured note for $100,000 signed by M & C, and a promissory note for $100,000, signed by Morisch Enterprises, an alleged subsidiary of M & C, to be secured by a parcel of real property located at 202-204 East Fourth St. in Santa Ana, and owned by Morisch Enterprises.

By letter dated August 21, 1984, Finley acknowledged receipt of M & C's telegram. In that letter Finley informed M & C of "latent known defects" in the subject property including the fact that it was not in compliance with the City of Santa Ana's seismic ordinance and that it would cost $187,606 to bring the property up to code. Finley also informed M & C that because of concerns over Santa Ana's Seismic Code requirements, Tamma "has steadfastly refused to accept as security a deed of trust on the property being sold." Finley explained that Tamma wanted an unsecured note for $100,000 and another note for $100,000 secured by property other than the subject property. Tamma did not want to be the holder of a purchase money mortgage, because, "[i]n the event of the completion of a foreclosure by a lienholder, she could maintain an action as a sold-out junior lienor and obtain a personal judgment against the maker of the note." Finley stated that under these circumstances, "[t]he financial capability of the maker of the note is of paramount consideration . . . ." Finley requested M & C's financial statement and tax returns for the last three years.

With respect to M & C's proposed security for the second $100,000 promissory note, Finley raised the following objections: "It appears that the proposed deed of trust on the real property located at 202-204 East Fourth Street, Santa Ana, California, would put the Seller in a third (3rd) position behind the liens of the City of Santa Ana and of an institutional lender. In checking with the Santa Ana Planning Department, we found that no schematic plans have been submitted to the City of Santa Ana for this property as of August 16, 1984. It does not appear that the building will be in compliance with the Santa Ana Seismic Safety Ordinance by July 29, 1986, and thus, the building may be subject to a tear-down order, which would only leave the raw dirt as security for the $100,000 and the other liens. The City may currently have the right to order the building to be vacated by any tenants because no plans have been submitted by July 29, 1984, and it may be ordered to remain vacated until the completion of the necessary repairs to bring the building into compliance with the Ordinance. Further, it is our client's understanding that the current tenants (downstairs

only since the upstairs has no tenants) will be moving shortly; thus, no income would be generated to pay the encumbrances of record. Please respond to the comments contained in this subparagraph 6 and demonstrate that the real property at 202-204 East Fourth Street is adequate security for the $100,000 note."

Finley made clear that seller rejected M & C's proposed exercise as made and gave M & C an extension of 15 days from August 21, 1984, to meet seller's objections or to otherwise exercise the right of first refusal.[5] Seller also expressly reserved her right to claim (1) M & C's response was not received within 30 days of seller's written notice, and (2) M & C's failure in the past to make timely rent payments had terminated its right of first refusal.[6]

On August 31, 1984, M & C forwarded the requested financial statement and tax returns. In a letter dated September 4, 1984, M & C's attorney, Howard A. Erlich, stated, "Without waiving any of M & C's Beauty College, Inc.'s rights and without conceding that your demands are justified, M & C Beauty College, Inc. would like to assure you that 202-204 East Fourth Street will be adequate secu[r]ity for the $100,000.00 note. To that end, it has engaged the appropriate contractors to make the changes which the law requires. The changes will be made because they are required by law. In any event, the property is adequate security for the loan." At no time did M & C ever tender any money or proposed notes or trust deeds.

Upon investigation, Finley determined the value of the property offered to secure the Morisch note was not comparable to that offered by the McCullochs and was, in fact, inadequate. The property suffered from the very defect which inspired the sale. Tamma and Finley wanted to "remove the risk of seismic loss" from their mother's income source. If they accepted property as security which was not in compliance, they would incur the risk they sought to avoid. The property offered by M & C did not comply with Santa Ana's seismic ordinance and M & C or Morisch did not seem to be making any concerted effort to bring the property up to code.[7] Because the

---

[5] Finley stated, "Although you were to have met the terms of the offer to sell within thirty (30) days after our notice to you and *you have failed to do so* for the reasons set forth above, we will give you fifteen (15) days from the date of this letter (through September 5, 1984) to respodn [*sic*] to the requests contained in this letter. If you should not so respond, it is to be understood that you will then be deemed to have failed to meet the bona fide offer of sale as required by the lease dated March 5, 1981."

[6] Seller's rent collection agent testified M & C had been late on all rent payments over a three-year period except one, and the agent had had to serve M & C with a three-day notice to pay rent or quit on at least six occasions.

[7] There was testimony at trial that M & C failed to comply with the "Plan Check" deadline of July 29, 1984, and plans were not submitted until August 17, 1984. A building permit for

property was not in compliance, no one could occupy the second floor of the building. Morisch had only one tenant on the first floor and that tenant was leaving.

M & C's position at trial and on appeal is that its offer, by its terms, was identical with the McCullochs' offer and Finley had no right to go behind the offer and reject it based on M & C's creditworthiness and the equity value of the proposed security. ■■■ Specifically, M & C contends the following instruction, given to the jury over M & C's objection, was a misstatement of the applicable law: "An owner of real property must sell the real property to a person who has a right of first refusal if the terms and conditions of an offer of a third party purchaser are met by the person who has the right of first refusal. [¶] The owner of the real property is entitled to make a reasonable determination if the offer made by the holder of the right of first refusal is on the same terms and conditions. The owner of the real property has the right to refuse to sell the real property to the holder of the right of first refusal, as long as the refusal to sell is not unreasonable or arbitrary or deliberate, or the declination to sell is not without just cause or excuse."

M & C contends that when the McCullochs made an offer which the owner was willing to accept, its right of first refusal ripened into an option to purchase, citing *Rollins* v. *Stokes* (1981) 123 Cal.App.3d 701, 710 [176 Cal.Rptr. 835] and *Mercer* v. *Lemmens* (1964) 230 Cal.App.2d 167, 171 [40 Cal.Rptr. 803]. As an optionee, M & C contends it was accepting the owner's offer to purchase on the same terms as the McCullochs when it sent its telegram, and the jury instruction erroneously referred to its acceptance as an offer. Because M & C was accepting the owner's offer, the owner had no right to impose further conditions concerning the acceptability of its security and its financial responsibility.

■■■ M & C is correct to the extent it maintains once a seller accepts an offer from a prospective buyer the holder of a right of first refusal on the property has a form of option to purchase, that is an option, within a stated time, to purchase on the same terms and conditions as the prospective purchaser's offer. As was said by the court in *C. Robert Nattress & Associates* v. *CIDCO* (1986) 184 Cal.App.3d 55, at page 66 [229 Cal.Rptr. 33], "We can readily agree that a right of first refusal, that is, a preemptive right to purchase property on the terms and conditions of an offer to purchase by a third person becomes an option of sorts after a bona fide offer to purchase has been made to the owner by a third person. [Citations.] It is also true

the seismic repairs was issued by the city in October 1984, but as of the date of trial in March 1985, M & C had not started construction of those repairs.

that numerous reported cases describe an option as an 'irrevocable offer.' [Citations.]" The instruction in question might have more accurately described the holder of the right of first refusal's action as an acceptance rather than an offer. ▪ However, the real issue presented here is whether M & C's acceptance was on the same terms and conditions as the McCulloch's offer, and that determinative issue was adequately covered in the instructions.

In the usual real property purchase and sale, the seller accepts a note as part of the purchase price secured by a trust deed on the property being sold, and the holder of the preemptive right duplicates that offer including the sale property as security. In those circumstances, the security for any note given by the prospective purchaser or by the holder of the preemptive right is the same. In *C. Robert Nattress,* both parties proposed the sale property as security for the note and the court stated, "Both offers were identical in respect to the assumption of the existing first deed of trust so that presents no problem." *(Id.,* at p. 70; see also *Rollins* v. *Stokes, supra,* 123 Cal.App.3d 701, 705.)

▪ Where, however, the prospective purchaser offers security other than the sale property and the holder of the preemptive right offers an entirely different property, an obvious question arises as to whether the holder of the preemptive right has accepted on the same terms and conditions, even where the purchase price and other terms are identical, as here. The value of the security for a note is a legitimate concern of the seller and constitutes part of the consideration for the sale.

Of course, we recognize where the prospective purchaser offers a piece of his own property as security for part of the purchase price, the holder of the preemptive right can never offer identical terms. That circumstance should not foreclose the holder of the right of first refusal or his right would be illusory. But where different security is offered by each, it is not immediately apparent to the seller whether the security is comparable. Under these unusual circumstances,[8] the seller should have a reasonable time to ascertain whether the security offered is acceptable. That decision must be governed by a reasonable man standard. (See *Kadner* v. *Shields* (1971) 20 Cal.App.3d 251, 263 [97 Cal.Rptr. 742].) ▪ The disputed jury instruction generally set forth the law in conformity with the rules stated above and we hold the trial court did not err in giving that instruction.

▪ M & C contends the trial court should have granted its motion for new trial because the evidence showed Tamma waived any defects in M &

---

[8] We have not found one case which considers the factual situation presented here, and counsel for the parties cite nothing directly in point.

C's exercise of the right of first refusal and the trial court should have given instructions on the issue of waiver. M & C did not plead waiver or estoppel as a defense nor did it ask for jury instructions on that issue. ■ Ordinarily a judge has no duty to instruct when counsel fails to ask for an instruction on a particular issue. (*Downing* v. *Barrett Mobile Home Transport, Inc.* (1974) 38 Cal.App.3d 519, 523 [113 Cal.Rptr. 277].)

■ M & C claims the evidence shows Tamma never told it she objected to use of the 202-204 East Fourth Street property as security for the note and Tamma's silence constituted a waiver of any objection. M & C relies on *Rollins* v. *Stokes, supra,* 123 Cal.App.3d 701, wherein the court stated, "Although acceptance must be in the terms of the option agreement, an optionor can waive one or more of the terms. [Citation.] If an optionor does not specify the alleged defects in the tender by the optionee, then a waiver results. [Citation.]" (*Id.,* at p. 713.)

Our recitation of the pertinent facts shows there is no factual support for M & C's waiver theory. Finley's August 21, 1984, letter clearly informed M & C that Tamma objected to the security offered in support of the note because the East Fourth Street property was not in compliance with Santa Ana's seismic requirements and the tenants were moving. Although Tamma gave M & C an extension of 15 days to remedy its purported acceptance, M & C did nothing to satisfy Tamma's objections. The jury determined that Tamma's objections to the security were reasonable and the evidence supports the jury's determination. The trial court did not err in denying M & C's motion for new trial.

■ M & C also claimed for the first time in its motion for new trial that it was entitled to 30 days notice under the lease before suit could be brought for nonpayment of rent rather than the 3-day statutory notice under unlawful detainer statutes. Failure to think of a legal issue is not grounds for a new trial. In addition, M & C relies on a general provision of the lease respecting failure to comply with conditions. In *Shulman* v. *Vera* (1980) 108 Cal.App.3d 552, 563-564 [166 Cal.Rptr. 620], the court held the three-day statutory notice is applicable to an action for unlawful detainer even though the lease between the parties provides for a longer notice period.

■ Finally, M & C contends the trial court erred in awarding attorney fees to the McCullochs. The lease provides attorneys' fees to a prevailing party in any dispute concerning the lease provisions, but M & C claims this suit went beyond the lease. M & C contends, "[A]lmost the entirety of the case was devoted to a question entirely outside of the lease; to wit, whether Plaintiffs were bona fide purchasers of the subject property."

We find the fees in question were incurred in pursuit of plaintiff's cause of action for unlawful detainer. In defense of the unlawful detainer, M & C raised the questions of title that took all the time in this case, but the McCullochs were not responsible for introducing those issues. (See *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124 [158 Cal.Rptr. 1, 599 P.2d 83].)

The judgment is affirmed.

Wallin, J., and Crosby, J., concurred.