[No. H030053. Sixth Dist. July 17, 2007.]

GLEN HARTZHEIM et al., Plaintiffs and Appellants, v.
VALLEY LAND & CATTLE COMPANY et al., Defendants and
Respondents.

## COUNSEL

Rossi, Hamerslough, Reischl & Chuck, Ronald R. Rossi, Susan R. Reischl; Wendel, Rosen, Black & Dean, Charles A. Hansen and Amanda Steiner for Plaintiffs and Appellants.

Reed Smith, Paul D. Fogel, Dennis Peter Maio; Ruby & Schofield, Allen Ruby and Glen W. Schofield for Defendants and Respondents.

## OPINION

## PREMO, J.—

### I. INTRODUCTION

Plaintiff Hartzheim Enterprises, LLC,[1] leased a parcel of real property from defendant Valley View Packing, Co. (Valley View), under a lease that gave Hartzheim a "right of first refusal" to purchase the property in the event Valley View decided to sell it. Valley View, which was a partnership owned and controlled by members of the Rubino family, transferred the property to the partners' grandchildren without giving Hartzheim an opportunity to purchase it. Hartzheim sued, claiming that Valley View had failed to honor

---

[1] Hartzheim Enterprises, LLC, along with Glen Hartzheim, individually and doing business as Glen Hartzheim Capitol Dodge, are plaintiffs in this action. We shall refer to plaintiffs collectively as Hartzheim.

the right of first refusal contained in the lease. On cross-motions for summary adjudication the trial court held that the transfer did not trigger the right of first refusal. Hartzheim appeals from the resulting judgment.

We shall affirm. We conclude that this particular intrafamily transfer did not trigger the right of first refusal because it was not made pursuant to a "bona fide offer from any third party for the purchase" of the property, as required by the parties' agreement.

## II. FACTS

Peter Rubino settled in the Santa Clara Valley in 1892. His sons, Sam, Leonard, and Joseph, formed Valley Land & Cattle Company (Valley Land & Cattle), a partnership in which each brother owned a one-third share. Over the years, Valley Land & Cattle acquired a number of parcels of real property, including a five-acre parcel currently identified as 1050 Capitol Expressway in San Jose. In 1978, Valley Land & Cattle leased the Capitol Expressway property to Chrysler Realty Corporation for operation of a car dealership. Chrysler assigned the lease to Hartzheim in 1996. Hartzheim has operated a car and motorcycle dealership at the Capitol Expressway location ever since. There are approximately eight years left on the lease.

The Valley Land & Cattle partners changed over the years. Leonard Rubino died in 1976, leaving his interest to his wife, Grace, and their daughter, Patricia.[2] Sam died in 1983 and left his interest to his wife, Rose, and their son, Salvatore. In 1992, Joseph's family relinquished its interest and the partnership changed its name to Valley View. At all pertinent times thereafter Valley View was made up of four partners: Rose, Grace, Salvatore, and Patricia. Salvatore's children, Kimberly and Salvatore J., and Patricia's children, Michael and Tricia (collectively, the grandchildren), held contingent interests in Valley View through trusts established by their parents or grandparents.

In addition to the Capitol Expressway property, the Rubino family owned the real property where the original Rubino family home had been located. That property was known to family members as the home ranch. In 1995, as part of the estate planning process, Rose and Grace transferred fractional interests in the home ranch to the grandchildren. The remaining interest in the home ranch was held by other Rubino family members.

---

[2] Patricia Rubino is now known as Patricia Rubino-Brunetti. For the sake of clarity, we shall refer to the Rubino family members by their first names and, where necessary, their middle initials.

In or about the year 2000, the Rubino family considered selling the home ranch. Since the property had been in the family for so long—parts of the home ranch had been purchased over 100 years ago—the sale was likely to result in substantial capital gains. Among the Rubino family businesses was Valley View Packing, Inc., a corporation wholly owned by the Valley View partnership. The corporation had a large net operating loss that it had been carrying forward on its books. Anthony DeMaria was an accountant employed by Valley View Packing, Inc., from 1994 through April 2001. He was controller of the corporation and was also responsible for advising the individual Rubino family members. He recommended that title to the home ranch be placed in the name of the corporation so that when the property was sold the corporation could offset any gains from the sale with the corporation's net loss, thereby reducing the tax consequences of the transaction. At the same time, Rose and Grace, who were both over 90, desired to reduce the size of their estates to reduce estate taxes that would be due upon their deaths. One way to do that was to reduce the assets they held through Valley View.

As a result of these tax concerns, Salvatore and Patricia, who were actively managing the partnership's affairs at the time, decided to have the grandchildren exchange their fractional interests in the home ranch for Valley View's interest in the Capitol Expressway property. For purposes of the exchange, the Capitol Expressway property was to be valued at its appraised value of $4 million. Valley View would then transfer the home ranch interests to Valley View Packing, Inc.

Salvatore and Patricia made these decisions in consultation with DeMaria and their mothers, Rose and Grace. The grandchildren did not negotiate the exchange or make any offer to Valley View for the purchase of the Capitol Expressway property. Indeed, Tricia and Michael were still minors at the time and their interests in the Capitol Expressway property were to be held by their mother, Patricia, as trustee of their individual trusts.

The transaction was completed as planned and, in the end, Valley View Packing, Inc., sold the home ranch without generating any tax liability and the value of the grandmothers' assets was reduced by the transfer of the Capitol Expressway property out of the Valley View partnership.[3] Salvatore stated in his declaration that "no one in the Rubino family ever considered

---

[3] In April 2002, Valley View was converted to a limited liability company. In December of that year, all of Grace's interests in the company were transferred to her grandchildren, Tricia and Michael. Rose transferred all of her interest in the company to her son, Salvatore, and her two grandchildren, Salvatore J. and Kimberly.

selling the Capitol Expressway Property to any third party. In fact, the intent was just the opposite—to transfer the property to the grandchildren so that the property would remain within the family."

### III. PROCEDURAL BACKGROUND

Paragraph 18 of the Capitol Expressway lease gives the lessee a right of first refusal to purchase the property in the event the landlord obtains a "bona fide offer from any third party" that the landlord is willing to accept. Hartzheim believed that Valley View's transfer of the property to the grandchildren should have triggered that right. Hartzheim filed this lawsuit in 2003, naming the Rubino family partnerships and the four grandchildren as defendants.[4] The second amended complaint contains seven causes of action: (1) breach of contract, (2) intentional interference with contract, (3) specific performance, (4) conspiracy, (5) aiding and abetting, (6) constructive trust, and (7) declaratory relief. The first six causes of action pertain to Hartzheim's argument that defendants had breached the lease by failing to offer the property to him. Hartzheim seeks cancellation of the deed to the grandchildren and the opportunity to purchase the property upon the same terms and conditions it was acquired by the grandchildren. The seventh cause of action, which is not the subject of this appeal, sought a judicial declaration concerning the manner in which rent was calculated.

Hartzheim filed a motion for summary adjudication of the cause of action for specific performance. Defendants opposed the motion and filed their own motion for summary judgment or, in the alternative, summary adjudication of all seven causes of action. Defendants argued that, as a matter of law, they had not breached the lease because the transaction at issue had not triggered the right of first refusal and that they were entitled to a declaration pertaining to the calculation of rent.

The trial court denied Hartzheim's summary adjudication motion and granted defendants' motion as it pertained to the first six causes of action. The trial court concluded that the undisputed evidence established that plaintiffs' right of first refusal was not triggered by the transfer to the grandchildren because the transfer was part of the grandmothers' estate

---

[4] Named defendants are Valley Land & Cattle, Valley View, Salvatore J. Rubino, Kimberly A. Rubino, Patricia G. Rubino-Brunetti, as Trustee of the Tricia Andrea Marie Brunetti Trust No. 3, and Patricia G. Rubino-Brunetti, as Trustee of the Michael Leonard Brunetti Trust No. 3.

planning and, therefore, it "was not transferred pursuant to a 'bona fide offer' from a 'third party' as required by paragraph 18 of the lease." The court further found that, even if the right was triggered by the proposed transaction, there was no transfer for value or sale of the property because the property the grandchildren traded for the Capitol Expressway property had been a gift from their grandmothers. After the parties stipulated to the dismissal of the seventh cause of action, the trial court entered judgment in favor of defendants. Hartzheim appeals from the judgment, challenging only the summary adjudication of the breach of contract, specific performance, and constructive trust causes of action.

## IV. STANDARD OF REVIEW

As in any appeal challenging a trial court's summary judgment or summary adjudication ruling, our review is de novo. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

## V. DISCUSSION

■ A right of first refusal, also called a preemptive right (7 Miller & Starr, Cal. Real Estate (3d ed. 2004) § 19:136, p. 421), is "the 'conditional right to acquire . . . property, depending on the [owner's] willingness to sell.' [Citation.] The holder of the right merely has the preference to purchase the property over other purchasers if the owner of the property 'elects to sell the property.' [Citation.] The right does not become an option to purchase until the owner of the property voluntarily decides to sell the property and receives a bona fide offer to purchase it from a third party. [Citations.] Normally, the right is enforceable against third persons entering into a contract to buy the property with notice of the holder's right." (*Campbell v. Alger* (1999) 71 Cal.App.4th 200, 206–207 [83 Cal.Rptr.2d 696].) The contract terms dictate the particular circumstances that will trigger the right. (*Id.* at p. 207.) Accordingly, the question presented is primarily one of contract interpretation.

■ Unless interpretation turns upon the credibility of extrinsic evidence, interpretation of a contract is purely a judicial function. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866 [44 Cal.Rptr. 767, 402 P.2d 839].) We interpret the contract terms by applying settled rules. " ' "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over. [Citation.] If the court

decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean?" ' (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1448 [66 Cal.Rptr.2d 487].)" (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 524 [132 Cal.Rptr.2d 151].) We begin, therefore, by asking whether the language of paragraph 18 is reasonably susceptible to the meaning Hartzheim gives it.

Paragraph 18 reads, in pertinent part: "Landlord agrees that, if at any time during the original or any renewal term hereof Landlord shall obtain a bona fide offer from any third party for the purchase of all or any portion of the Demised Premises which offer the Landlord proposes to accept, Tenant shall be afforded an opportunity . . . to purchase the Demised Premises . . . at the price and upon the same terms and conditions as are set forth in such offer. . . ."

The parties agree that the right of first refusal under paragraph 18 is triggered only when the landlord receives an acceptable offer from a third party for the purchase of the property. They differ over whether those conditions precedent were met in this case. Hartzheim argues that there was a bona fide offer from a third party because the transfer to the grandchildren was made pursuant to a contract of sale, which means that there must have been an offer to buy; the offer was bona fide since the exchange of properties was based upon the properties' appraised value; and the grandchildren are third parties because they are strangers to the lease agreement. Hartzheim further argues that the transfer to the grandchildren was not a gift and that defendants are estopped from arguing otherwise because they reported the transaction to the taxing authorities as a sale. Hartzheim concedes that the conveyance was part of a plan to minimize capital gains and estate taxes but argues that the purpose does not alter the character of the transaction. Defendants argue that Valley View never obtained a bona fide offer for the purchase of the property because the exchange was not negotiated at arms' length, the grandchildren never made an offer, and the grandchildren are not third parties because they hold contingent interests in the partnership through their parents or grandparents.[5]

---

[5] In the alternative, defendants argue that the right of first refusal is inapplicable to intrafamily transfers. In support of this position below, defendants submitted Salvatore's declaration stating that, at the time the lease was executed, Sam Rubino told Chrysler that the right of first refusal was not intended to apply to transfers within the Rubino family. Hartzheim objected that the evidence was inadmissible, but did not obtain a ruling on the objection. Since we find defendants' primary argument dispositive, we do not reach the alternative argument and, therefore, need not consider the challenged evidence.

In short, the question is whether the contractual requirement that the landlord "obtain a bona fide offer from any third party for the purchase [of the property]" may be interpreted to include Valley View's decision to convey the property to the grandchildren. A handful of cases involving conveyances between related persons have interpreted similar language. The only California case to do so is *Pellandini v. Valadao* (2003) 113 Cal.App.4th 1315, 1317 [7 Cal.Rptr.3d 413], in which the question was whether a deed in lieu of foreclosure from one co-owner of the property to the other co-owner triggered the right. The clause at issue gave "a right of first refusal to meet any bona fide offer for purchase of . . . the property." After noting that the case was one of first impression in California, the court reviewed a series of cases from other states, holding that a "bona fide sale occurs when an interest in the property is sold to a third party." (*Id.* at p. 1322.) Since the person who obtained the deed was already a co-owner of the property and a party to the contract containing the right of first refusal, she was not a third party and, therefore, the preemptive right was not triggered. (*Ibid.*)

In *Pellandini*, the dispositive fact was that the co-owners did not convey the property to anyone outside the underlying contractual relationship. Indeed, transfer of control of the property to a third party is one earmark of a bona fide sale. (See *Prince v. Elm Inv. Co., Inc.* (Utah 1982) 649 P.2d 820, 821, 823 [first refusal right dependent upon property being "offered for sale" was triggered when owner transferred property to partnership controlled by third party]; *Meyer v. Warner* (1968) 104 Ariz. 44, 48 [448 P.2d 394] [conveyance to a friend triggered preemptive right because friend was not party to lease that contained the right].) There are circumstances, however, where conveyance to a third party does not trigger a preemptive right, such as where the transfer does not alter actual control of the property and is not the result of arms' length dealing. This type of transaction was described in *Creque v. Texaco Antilles Ltd.* (3d Cir. 2005) 409 F.3d 150 (*Creque*), which involved a right of first refusal nearly identical to the one in this case. The lessee had "the right of first refusal to purchase [the property] 'on the same terms and at the same price as set forth in a bona fide offer to purchase.' " (*Id.* at p. 151.) During the lease term, the property was transferred from one company to another to avoid a newly enacted tax. Both companies were wholly owned subsidiaries of a larger company. (*Ibid.*) The issue was identical to that before us, i.e., "whether there was a bona fide third party offer to purchase [the property] at some point during the transaction between [the related entities]. If there was, then the condition precedent to the exercise of the right of first refusal has been satisfied." (*Id.* at pp. 152–153.)

The plaintiff in *Creque* argued (as Hartzheim does) that since the conveyance took the form of a sale and was reported as such on the companies' tax returns, there necessarily must have been a bona fide offer to purchase. (*Creque, supra,* 409 F.3d at p. 154.) The appellate court rejected the argument, explaining that "we must look beyond formalities and accounting entries to the true nature of the conveyance." (Citing *Isaacson v. First Security Bank of Utah* (1973) 95 Idaho 452 [511 P.2d 269].) The court observed that there was no evidence of negotiations that would denote an open market sale. The terms of the deal had been set by the parent corporation, which had directed the conveyance to avoid additional tax liability. Finally, "and perhaps most significantly," the same entity (the parent corporation) retained control over the property after the conveyance. (*Creque, supra,* 409 F.3d at p. 154.) The court concluded that where transfer is from one subsidiary to another "in good faith for a legitimate business purpose, there has been no bona fide third party offer sufficient to trigger a right of first refusal on the property." (*Id.* at p. 155.) Several other cases construing similar language have reached the same conclusion. (See *Sand v. London & Co.* (1956) 39 N.J. Super. 513, 519 [121 A.2d 559] [transfer for tax reasons between companies owned by same individuals did not trigger preemptive right dependent upon owner's receipt of an offer for sale]; *Kroehnke v. Zimmerman* (1970) 171 Colo. 365, 368 [467 P.2d 265] [transfer of property to one's alter ego did not demonstrate a desire to sell necessary to trigger right of first refusal]; *McGuire v. Lowery* (Wyo. 2000) 2 P.3d 527, 530 [transfer from individuals to an entity controlled by the individuals was not the result of an offer to purchase]; *Wallasey Tenants Ass'n, Inc. v. Varner* (App. D.C. 2006) 892 A.2d 1135, 1139–1141 [transfer to owner's limited liability company for purpose of limiting owner's liability and simplifying estate planning did not demonstrate desire to sell].)

One important factor in the foregoing cases holding that a preemptive right had not been triggered, even where transfer was to a third party, is that control of the property was not significantly affected by the transaction. But change in control of the property is not always dispositive. A gift of the property to third parties completely changes control but does not trigger a typical right of first refusal. (*Isaacson v. First Security Bank of Utah, supra,* 511 P.2d 269 [father's below market "sale" to son was deemed a gift that did not trigger first refusal right].) Indeed, Hartzheim's argument that the conveyance was not a gift impliedly recognizes that if the conveyance had been an outright gift, the first refusal right would not come into play.

■ Although none of the preceding examples exactly reflect the facts of this case, we glean from them three important considerations to apply in determining whether a right of first refusal has been triggered. First, we must carefully consider the contract terms to determine the conditions necessary to invoke the right. Second, where a right of first refusal is conditioned upon receipt of a bona fide third party offer to purchase the property, the right is not triggered by the mere conveyance of that property to a third party. "Only when the conveyance is marked by arms' length dealing and a change in control of the property may that right be exercised." (*Creque, supra,* 409 F.3d at p. 155.) Generally speaking, it is the concurrence of both an arms' length transaction and change in control of the property that characterizes a bona fide sale. (*Prince v. Elm Inv. Co., Inc., supra,* 649 P.2d at p. 823.) The absence of the first factor, as in the case of a gift, or the second factor, as in the case of a transfer between entities owned and controlled by the same individuals, usually means that there was no sale, or no bona fide offer for sale, within the meaning of the typical right of first refusal.

Third, we must look through the formalities of the transaction to determine its true nature. (*Isaacson v. First Security Bank of Utah, supra,* 511 P.2d at p. 272.) Courts will not tolerate schemes designed to avoid a contractual right. For example, a landlord cannot avoid a right of first refusal to purchase a property by accepting an offer to purchase a larger parcel including the portion subject to the right. (*Maron v. Howard* (1968) 258 Cal.App.2d 473, 486–487 [66 Cal.Rptr. 70].) On the other hand, legitimate business or personal reasons, untainted by an intent to avoid a contractual preemptive right, weigh in favor of finding that the right was not triggered by the transaction. (*Wallasey Tenants Ass'n, Inc. v. Varner, supra,* 892 A.2d at p. 1140.)

Applying these principles to the instant case, we conclude that the right of first refusal contained in paragraph 18 cannot reasonably be interpreted to apply to the circumstances presented here. The evidence indisputably demonstrates that the conveyance was not marked by arms' length dealing. There were no negotiations. Salvatore and Patricia made the decision; they did not even consult the grandchildren. It is undisputed that Valley View would not have considered selling the property to anyone outside the family. And there is no evidence that Valley View would have considered an exchange for

anything other than the grandchildren's interests in the home ranch.[6] Thus, Valley View dictated the terms and conditions of the exchange without any input from the would-be purchasers.

It is true that the grandchildren were not parties to the lease and, as such, would be considered third parties. But the grandchildren were not entirely unrelated parties in that they were the children and grandchildren of the Valley View partners and they already held contingent interests in the partnership through their parents and grandparents. Furthermore, although the transfer bore many of the earmarks of a commercial transaction—it was documented and reported to state and federal tax authorities as a sale at the appraised value of $4 million—looking through the external indicia to the true nature of the transaction, we see that the conveyance was made for legitimate tax and estate planning reasons. By exchanging the grandchildren's home ranch interests for the Capitol Expressway property, the family achieved the joint goals of reducing the capital gains taxes due upon the sale of the home ranch and reducing the size of the grandmothers' estates. There is no evidence that the transfer was undertaken to deprive Hartzheim of the right accorded by paragraph 18.

Hartzheim argues that reversal is warranted because the trial court's decision deprived him of the ground lease and the right of first refusal. Not so. The decision had no effect upon the lease other than to confirm that the grandchildren are the successors in interest to the original lessor. As far as this record reveals, the right of first refusal is entirely unaffected by that ruling.

We conclude that "a bona fide offer from any third party" for the purchase of property cannot be interpreted to include Valley View's decision to convey the property to the children and grandchildren of its partners for tax and estate planning purposes. It follows that the trial court was correct in granting defendants' motion for summary adjudication of the breach of contract, specific performance, and constructive trust causes of action.

---

[6] This brings up another issue mentioned in passing in the briefs. "[O]nce a seller accepts an offer from a prospective buyer the holder of a right of first refusal on the property has a form of option to purchase, that is an option, within a stated time, to purchase on the same terms and conditions as the prospective purchaser's offer." (*McCulloch v. M & C Beauty Colleges, Inc.* (1987) 194 Cal.App.3d 1338, 1345 [240 Cal.Rptr. 189].) Even if the transaction in question was the result of a bona fide offer, Hartzheim could not have met the terms of the offer because he could not have offered the home ranch interests in exchange. Whether this undisputed fact was sufficient to warrant summary adjudication is a point we need not consider.

## VI. Disposition

The judgment is affirmed.

Rushing, P. J., and Elia, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 10, 2007, S155698.