Filed 2/1/23  Koenig v. Koenig CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| VIRGINIA JUNG LUM KOENIG, | B322647 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 21PR190203) |
| v. | |
| LESLEY KOENIG et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Julie A. Emede, Judge.  Affirmed.

Law Office of Kenneth H. Prochnow and Kenneth H. Prochnow for Defendants and Appellants.

Wagstaff, von Loewenfeldt, Busch & Radwick, Michael von Loewenfeldt; Jorgenson, Siegel, McClure & Flegel and John L. Flegel, for Plaintiff and Respondent.

Appellants Lesley Koenig and Diana "Dee" Koenig Otte (sometimes grandchildren)[1] appeal from the probate court's order on the petition of respondent Virginia Jung Lum Koenig, who sought instructions under Probate Code section 17200[2] regarding a transfer of real property to the Koenig Family Trust. The issue is whether this triggered Lesley and Dee's right of first refusal to purchase the property. The trial court found that the property had not been transferred into the trust, that if a transfer had occurred, it did not trigger a right of first refusal, and that Lesley and Dee did not have the right to obtain the real property at no cost. We affirm the order.

## FACTUAL BACKGROUND

Frederick Koenig obtained the home at 13651 Old Altos Road, Los Altos, California (Los Altos home), in 1979 as a bequest in the will of his mother, Marie-Luise Koenig. A provision was included in her will that if Frederick chose to sell or otherwise dispose of the Los Altos home, then her other son, George Koenig,[3] or her grandchildren would have a right of first refusal to purchase the Los Altos home from Frederick. Marie-Luise's will allowed George or her grandchildren 60 days to exercise the right of first refusal after they received written notice of Frederick's decision to sell or otherwise dispose of the Los Altos

---

[1]    In that many of the parties share the same surname, we will refer to them by their first name. We mean no disrespect.

[2]    All further statutory references are to the Probate Code unless otherwise specified.

[3]    In 2014 George and his son Nick both waived any claim to the property.

home. The right of first refusal allowed George or the grandchild to purchase the home for the lesser of the sale price or the fair market value of the property, as determined by an independent appraiser. The probate court confirmed the transfer of the real property to Frederick in a 1981 order for final distribution of Marie-Luise's estate.

In 2014, while making an estate plan, Frederick filed a petition to seek an order clarifying whether the right of first refusal would be triggered if he transferred the Los Altos home into a revocable trust. The trial court denied the petition on the ground that it lacked the authority to clarify the 1981 order for final distribution of Marie-Luise's estate.

Frederick then drafted a will that directed the executor to transfer the Los Altos home to the trustee of the Koenig Family Trust, dated September 27, 1993, so it could be added to the trust estate. He also directed the executor to comply with the procedures identified in the 1981 order for final distribution by giving written notice of the transfer to the grandchildren.

In 2018, Frederick and his wife Virginia executed an amendment to the Koenig Family Trust in which they made a general assignment of all real and personal property to the Koenig Family Trust. In the amendment, they agreed that either settlor could revoke the trust and that they could withdraw their property from the trust without notice to the other settlor.

## PROCEDURAL BACKGROUND

Frederick passed away on February 17, 2019. His will designated Virginia to be the executor, and she filed a petition on March 18, 2019, for probate of Frederick's will.

3

Lesley and Dee, Frederick's daughters from a previous marriage, then filed a petition under section 850 on August 12, 2019, to request that the Los Altos home be transferred out of the probate estate. They claimed a right to the Los Altos home following their discovery that Frederick had transferred the Los Altos home to the Koenig Family Trust in the 2018 amendment to the trust. They alleged that this transfer allowed them to exercise their right of first refusal and obtain the Los Altos home at no cost to them because Frederick had received no money when he transferred the Los Altos home into the trust.

Before the trial court made a decision on the section 850 petition, Virginia filed a petition under section 17200 on May 18, 2021, requesting a determination whether the general assignment of assets in the 2018 amendment to the Koenig Family Trust had triggered the right of first refusal. On August 23, 2021, the trial court granted relief to Virginia on her petition by finding that the assignment did not transfer the Los Altos home into the trust. The order added that, even if the Los Altos home had been transferred to the trust, the transfer was not a sale or disposition of the Los Altos home for the purposes of the right of first refusal in Marie-Luise's will.

Lesley and Dee filed a timely notice of appeal of the order on Virginia's petition on October 21, 2021. As to Lesley and Dee's separate petition for relief under section 850, the trial court stayed proceedings until the decision on this appeal.

## DISCUSSION
### I.     Standard of review
The probate court has wide discretion to make any order and take any action necessary or proper to dispose of matters

4

presented by a petition under section 17200. (*Manson v. Shepherd* (2010) 188 Cal.App.4th 1244, 1258.) The applicable standard of review, therefore, is abuse of discretion. (*Ibid*.)

This standard, however, is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. (*Manson v. Shepherd, supra*, 188 Cal.App.4th at p. 1259.) The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious. (*Ibid*.)

The main question presented in this appeal is whether the trial court correctly concluded that Frederick did not trigger the right of first refusal in Marie-Luise's will by amending the Koenig Family Trust in 2018. "The interpretation of a will or trust instrument presents a question of law unless interpretation turns on the credibility of extrinsic evidence or a conflict therein." (*Burch v. George* (1994) 7 Cal.4th 246, 254.) Lesley and Dee argue that we should use the de novo standard of review because we are interpreting a phrase in a will. This is the standard we use here because we are reviewing the trial court's conclusions of law with regard to the interpretation of a will and trust. Further, there is no indication in the record that the parties offered or the trial court used any extrinsic evidence to determine the meaning of the will or trust documents. Courts may utilize extrinsic evidence to aid in construing a will or trust if it first finds that the will is ambiguous. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318.) The order does not indicate that the trial court made any such finding of ambiguity; therefore, we assume that the trial court followed the mandate of section 21102 and relied exclusively upon "[t]he intention of the transferor as expressed in the instrument." We,

5

therefore, use the de novo standard because the interpretation of the will and trust involves solely conclusions of law.

## II. Principles of will and trust interpretation

The rules governing the construction and interpretation of wills and trusts are set out in part 1 of division 11 of the Probate Code. The intention of the transferor, "as expressed in the instrument," controls our interpretation. (§ 21102.) The words of an instrument are to be given their ordinary and grammatical meaning. (§ 21122.)

Where there are provisions in a will or trust that appear to conflict, the different parts "are to be construed in relation to each other and so as, if possible, to form a consistent whole." (§ 21121.) Further, "[t]he words of an instrument are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative." (§ 21120.)

Bearing these principles in mind, we turn to the language of Marie-Luise's will and the 2018 amendment and restatement of the Koenig Family Trust to determine whether Lesley and Dee's right of first refusal arose in 2018.

## III. No right of first refusal in 2018 on transfer into the Koenig Family Trust

Paragraph "SIXTH" of Marie-Luise's will contains the right of first refusal for the Los Altos home:

> "If my son FREDERICK and any of my grandchildren survive me for 30 days and FREDERICK inherits my residence situated in Santa Clara County, California, and commonly known as 13651 Old Altos Road, Los Altos, California, he shall give written notice to my grandchildren and my son,

6

GEORGE in the event he thereafter desires to sell or otherwise dispose of my residence to someone other than one or more of my grandchildren. Delivery of such notice to my grandchildren and GEORGE shall be deemed to be an offer by FREDERICK to sell my said residence as provided below. Within 60 days after the receipt of said notice, my grandchildren and GEORGE shall have a 'right of first refusal' to purchase my residence for the lesser of the following amounts: (1) the selling price, or (2) the fair market value of the property at that time, as determined by an independent appraiser acceptable to all parties."[4]

---

[4] When the probate of Marie-Luise's will occurred, the probate court issued on June 3, 1981, an "ORDER AND DECREE SETTLING AND CONFIRMING FIRST AND FINAL REPORT AND WAIVER OF ACCOUNT OF EXECUTOR AND OF FINAL DISTRIBUTION OF ESTATE AND ALLOWANCE OF FEES TO EXECUTOR'S ATTORNEYS FOR THEIR ORDINARY SERVICES," i.e., a decree of distribution. "A decree of distribution is a judicial construction of the will arrived at by the court ascertaining the intent of the testator. . . . Once final, the decree supersedes the will . . . and becomes the conclusive determination of the validity, meaning and effect of the will, the trusts created therein and the rights of all parties thereunder." (*Estate of Callnon* (1969) 70 Cal.2d 150, 156, citations and footnote omitted.) The probate court's decree of distribution restated the relevant portions of paragraph SIXTH of Marie-Luise's will. It did not include any judicial construction of the terms in the will or any language ascertaining the intent of Marie-Luise. As a result, the probate court's decree does not include any conclusion determination on the meaning of the right

7

"'A right of first refusal is a contractual right to purchase property in the event the owner decides to sell.'" (*J&A Mash & Barrel, LLC v. Superior Court* (2022) 74 Cal.App.5th 1, 34.) The holder of the right merely has the preference to purchase the property over other purchasers if the owner of the property "'elects to sell the property.'" (*Ibid*.) It is a conditional right that arises when the specified conditions exist. (*Ibid*.)

The contract terms dictate the particular circumstances that will trigger the right. (*Hartzheim v. Valley Land & Cattle Co.* (2007) 153 Cal.App.4th 383, 389.) The question presented is primarily one of contract interpretation. (*Ibid*.) Unless interpretation turns upon the credibility of extrinsic evidence, interpretation of a contract is purely a judicial function. (*Ibid*.)

"'"'When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is "reasonably susceptible" to the interpretation urged by the party. If it is not, the case is over. [Citation.] If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean?'"'" (*Hartzheim v. Valley Land & Cattle Co., supra*, 153 Cal.App.4th at pp. 389-390.)

In Marie-Luise's will, the specified condition that triggers the right of first refusal is when Frederick ". . . desires to sell or otherwise dispose of my residence to someone other than one or more of my grandchildren." We begin, therefore, by determining whether the language of paragraph SIXTH is reasonably

---

of first refusal. Since the parties cite to the will when analyzing the right of first refusal in their papers, we will cite to the will and not the decree to avoid confusion and maintain consistency.

susceptible to the meaning Lesley and Dee give it, i.e., that the 2018 amendment and restatement of the Koenig Family Trust triggered the right of first refusal.

In 2018, Frederick and Virginia amended and restated the Koenig Family Trust, which had been executed on September 27, 1993, and then amended on December 20, 1998, June 1, 2010, and May 1, 2015. The trust identifies the trust property as that described in "Schedule A," which is labeled "General Assignment of Assets to Revocable Trust." In Schedule A, Frederick and Virginia assign, transfer, and convey the following to Frederick and Virginia, as trustees of the Koenig Family Trust:

> "all right, title, and interest in and to all real property in the United States and all personal property, tangible and intangible, now owned or hereafter acquired by them jointly or individually, including, by way of illustration and not by way of limitation, all of their jewelry, clothing, household furniture and furnishings, personal automobiles, books, and other tangible articles of a personal nature; real property; publicly traded or privately held stocks, bonds, or other securities; partnership interest, whether as a general or as a limited partner; sole proprietorships; deeds of trust; safe deposit boxes; and certificates of deposits, bank accounts, brokerage accounts and other similar accounts, excluding IRAs and any employer plans, as those plans are defined in Internal Revenue Code Sections 401-416."

The transfer of all right, title, and interest in and to all real property to the trust is not a sale because there is no exchange of consideration. However, the transfer to the trust could be a disposal of Frederick's interest in the Los Altos home. "Dispose of" means "'[t]o transfer or part with, as by giving or selling.'"

(*People v. Splawn* (1985) 165 Cal.App.3d 553, 558.) The phrase "all real property" would apply to Frederick's interest in the Los Altos home. Since Frederick assigned, transferred, and conveyed his interest in "all real property," which included his interest in the Los Altos home, this transfer in Schedule A could be interpreted as a disposal of his interest in the Los Altos home.[5]

In her will, however, Marie-Luise identified the particular circumstances that created the right of first refusal as Frederick selling or otherwise disposing of the Los Altos home *to someone other than one or more of her grandchildren*. Here, Frederick transferred the property to his family trust. A trust is not a legal entity. (*Boshernitsan v. Bach* (2021) 61 Cal.App.5th 883, 891.) Since the trust is not a legal entity, the transfer of his property to the trust was not the disposal of the Los Altos home to someone other than one or more of Marie-Luise's grandchildren.

Further, under the heading labeled "Administration," the trust states in section 1.3 that either settlor may, without notice to the other settlor, revoke any trust or withdraw property from any trust created by the trust document. A revocable trust is a trust that the person who creates it, generally called the settlor, can revoke during the person's lifetime. (*Barefoot v. Jennings*

---

[5] The 2018 amendment and restatement plus accompanying Schedule A are sufficient to transfer the real property into the Koenig Family trust because they are writings signed by Frederick to transfer the property from him, as settlor, to him, as trustee. (*Estate of Heggstad* (1993) 16 Cal.App.4th 943, 950 ["[A] written declaration of trust by the owner of real property, in which he names himself trustee, is sufficient to create a trust in that property, and that the law does not require a separate deed transferring the property to the trust."].)

10

(2020) 8 Cal.5th 822, 826.) This language in section 1.3 of the 2018 amendment and restatement establishes that the Koenig Family Trust is a revocable living trust.

When settlors transfer property to a revocable living trust, such property "is considered the property of the settlor for the settlor's lifetime." (*Estate of Giraldin* (2012) 55 Cal.4th 1058, 1065–1066.) "'[A] revocable inter vivos trust is recognized as simply "a probate avoidance device,"' and, 'when property is held in this type of trust, the settlor and lifetime beneficiary "'has the equivalent of full ownership of the property.'"'" (*Boshernitsan v. Bach, supra*, 61 Cal.App.5th at pp. 891-892.)

The transfer of Frederick's interest in the Los Altos home to a revocable trust, therefore, was not the disposal of the property to someone other than Marie-Luise's children.[6] Instead, the Los Altos home was considered the property of Frederick, the settlor, during his lifetime and he had the equivalent of full ownership of the property.

---

[6] One court has found that a transfer of property to a revocable trust did not "dispose of or part with an asset" for the purposes of a fraudulent conveyance because the property is still reachable by creditors. (*Gagan v. Gouyd* (1999) 73 Cal.App.4th 835, 842, disapproved with regards to holdings concerning marital settlement agreements in the context of fraudulent concealment in *Mejia v. Reed* (2003) 31 Cal.4th 657, 669.) Lesley and Dee suggest Frederick made the transfer to the Koenig Family Trust to thwart the intent of Marie-Luise in her will. Since the transfer to a revocable trust could not dispose of his interest in the Los Altos home, it did not thwart Marie-Luise's intent because her grandchildren could still reach it and exercise their right of first refusal once an actual sale or disposal of the Los Altos home occurred.

11

The trial court, therefore, correctly found that the transfer of the Los Altos home to the Koenig Family Trust in 2018 was not a sale or disposition of the property for the purposes of Marie-Luise's will. We thus affirm the trial court's order that granted Virginia's petition.

The trial court, however, did err in part when it found that the Los Altos home was not made an asset of the Koenig Family trust. The unambiguous language in Schedule A to the 2018 amendment and restatement shows that Frederick transferred his rights and interest in all real property to the trust. This would include his interest in the Los Altos home.

However, any error was not prejudicial because the 2018 transfer did not create the circumstances for Lesley and Dee to obtain a right of first refusal that would allow them to purchase the Los Altos home at no cost to them. After the 2018 transfer, Frederick had the equivalent of full ownership of the Los Altos property. No other party had control, possession, or an ownership interest in the Los Altos property. Since the home had not been sold or disposed of to someone other than the grandchildren of Marie-Luise, the 2018 transfer did not trigger Leslie and Dee's right of first refusal.

The trial court, thus, correctly granted Virginia's petition and found that Lesley and Dee's right to first refusal did not arise in 2018 when Frederick transferred the property to himself as trustee of the Koenig Family Trust.

IV. **Grandchildren have a right of first refusal to purchase the property, but not to receive it without cost**

Lesley and Dee also argue that the trial court erred when it found that they cannot receive the property for no cost. In

12

paragraph 4 of its order, the trial court found "Paragraph SIXTH A of the Last Will of Marie-Luise Koenig dated June 7, 1979 contains an option for [Lesley and Dee] to purchase the Property upon the happening of certain conditions, not to receive it for free."

A review of Marie-Luise's will reveals this is the correct interpretation of the manner for exercising the right of first refusal. Paragraph SIXTH has two sections, part A and part B. Part A applies if Frederick is alive and he seeks to sell or dispose of the Los Altos home. If Lesley and Dee then decide to exercise the right of first refusal, the price to purchase the property is "the lesser of the following amounts: (1) the selling price, or (2) the fair market value of the property at that time, as determined by an independent appraiser acceptable to all parties." Part A does not state that the grandchildren have any right to receive the property free. Instead, as the trial court found, Lesley and Dee have the right to purchase the property at the price specified in paragraph SIXTH, part A, of Marie-Luise's will.

Part B of paragraph SIXTH applies after Frederick dies and in other specified circumstances that do not fall within paragraph A.[7] In these specified circumstances, the

---

[7] These include Frederick being adjudicated a bankrupt, a guardian or conservator being appointed for Frederick's estate, Frederick making an assignment for the benefit of creditors, an interest being transferred or awarded to a spouse pursuant in a dissolution, property settlement, or separation agreement, or Frederick's spouse disposing of an interest in the property for the benefit of someone other than Frederick or Marie-Luise's grandchildren.

13

grandchildren have the right of first refusal, but the purchase price is the fair market value.

The trial court, therefore, correctly found that Marie-Luise's will does not allow Lesley and Dee to receive the Los Altos home at no cost to them.

## DISPOSITION

We affirm the trial court's order.  Each side is to bear their own costs.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
BENKE, J.*

_____

\*     Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14